IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW C. BICKEL,<br>　　　　Plaintiff<br><br>　　v.<br><br>JUDGE GORDON R. MILLER, et al.,<br>　　　　Defendants | C.A. No. 08-258 Erie<br><br>Magistrate Judge Baxter |

## OPINION AND ORDER

United States Magistrate Judge Susan Paradise Baxter.

### I.　　INTRODUCTION

#### A.　　Relevant Procedural History

Plaintiff Andrew C. Bickel, a prisoner formerly incarcerated[1] at the Crawford County Correctional Facility ("CCCF"), brings this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983 against: Judge Gordon R. Miller ("Judge Miller"), Chairman of the Crawford County Prison Board ("Prison Board"); Tim Lewis, Warden at CCCF ("Lewis"); Morris Wade ("Wade"), Jack Preston ("Preston"), and Sherman Allen ("Allen"), Crawford County Commissioners and members of the Prison Board; Vantage LTC Partnership d/b/a Care Apothecary (incorrectly identified by Plaintiff as "Vantage CCCF Healthcare Provider")("Vantage"); and Judy Urey, a nurse practitioner ("Urey").[2] (Defendants Miller, Lewis, Wade, Preston, and Allen are collectively referred to herein as "CCCF Defendants")

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his rights under the eighth and fourteenth amendments to the United States

---

[1] Plaintiff is presently incarcerated at the State Correctional Institution at Graterford, Pennsylvania

[2] The Court notes that Defendant Urey has never been served in this case, and no attorney has entered an appearance on her behalf.

Constitution, and violated his "right to a grievance system."[3]

On April 9, 2009, Defendant Vantage filed a motion to dismiss, contending that Plaintiff has failed to state a claim upon which relief may be granted against it. [Document # 37]. The CCCF Defendants filed their own motion to dismiss on May 22, 2009, arguing that Plaintiff has failed to exhaust his administrative remedies and, alternatively, has failed to state a claim upon which relief may be granted against them. [Document # 44]. Plaintiff has filed briefs in opposition to both motions. [Document ## 46 and 52]. This matter is now ripe for consideration

### B. Relevant Factual History

Plaintiff was transferred from the Erie County Prison to CCCF on or about May 21, 2008. (Complaint at ¶ 15). Plaintiff was not screened by CCCF's medical staff until May 23, 2008, at which time Plaintiff gave a "Nurse Brenda" two separate lists of medication: one listing medications Plaintiff received from outside physicians, and one containing a list of medications Plaintiff "thought he received at Erie County Prison." (Id. at ¶¶ 16-19). Plaintiff also informed "Nurse Brenda" that he had "two damage that were causing him severe pain," apparently referring to a protruding disk in the L4-L5 area of his spine that caused him to experience constant pain in his lower back, groin, knee and ankle. (Id. at ¶¶ 20-22). Plaintiff requested his prescribed pain medication, but was told by "Nurse Brenda" that CCCF did not keep any prescription pain medication on hand and that "medical may not be able to get [his] medication because of Memorial Day weekend." (Id. at ¶¶ 23-26). As a result, Plaintiff alleges that he "received no substantial pain medication for over seven (7) days leaving him in torturus [sic] pain.... (Id. at ¶ 30).

On June 27, 2008, Plaintiff saw a nurse and told her that he suffered a "new injury" to his

---

[3] The Court notes that Plaintiff also appears to raise a retaliation claim against a "Lt. Minore" for allegedly threatening to place him in solitary confinement after he filed a grievance about prison guards dispensing prescription medication. (Complaint at ¶ 50). However, since Lt. Minore is not named as a Defendant in this action, the Court will disregard this claim.

back when he moved a "heavy day room table" the day before. (Id. at ¶¶ 33-34). Yet, Plaintiff alleges that the medical staff let him "suffer with no doctor to examine [him]." (Id. at ¶ 35). Plaintiff complains that he "has been reduced to limited walking caused by stabbing spasms of pain in [his] back, groin, and leg, with no feeling in his feet." (Id. at ¶ 37). As a result, Plaintiff states that he "has been confined to sitting in a hard plastic chair, having to extend his damaged leg straight out to help reduce pain." (Id. at ¶ 38). In addition, Plaintiff alleges that he suffers "extreme tightness and pain in [his] head and face, causing [him] to lose clear vision, and loss of depth perception...." (Id. at ¶ 39). Nonetheless, Plaintiff complains that he was never seen by a doctor, physician assistant, or "psych doctor," during his time at CCCF. (Complaint at ¶¶ 27, 42, 48).

### C.    Standards of Review

#### 1.    Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual

allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, ___ F.3d. ___, ___, 2009 WL 2501662, at * 4-5 (3d Cir. Aug. 18, 2009).

### 2.     *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D.     **Exhaustion**

### 1.     **The Exhaustion Requirement of the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion

must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.  Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4]    The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion").  There is no "futility" exception to the administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines.  Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal."  Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant.  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it.  Id.

### 2.    The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the

---

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context.  Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[5] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### 3.     Exhaustion and Procedural Default Applied

The CCCF Defendants argue that Plaintiff has failed to exhaust his administrative remedies.  In support of this argument, the CCCF Defendants have submitted copies of various request slips, letters and grievances filed by Plaintiff during his time at CCCF, in an effort to show that Plaintiff failed to follow the proper grievance procedures and, thus, never properly exhausted his claims.  However, these documents alone, without a supporting affidavit or authentication, are insufficient to conclusively establish that Plaintiff failed to exhaust his administrative remedies.  Accordingly, the CCCF Defendants' motion to dismiss Plaintiff's complaint based on his alleged failure to exhaust administrative remedies is denied.

---

[5] There is a split of authority among the Circuits on this issue.  Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

### E.     Discussion

#### 1.     Eighth Amendment Claims

##### a.     Defendant Vantage

Plaintiff claims that all Defendants have treated his medical needs with deliberate indifference.  In response, Defendant Vantage argues that Plaintiff's Eighth Amendment claim against it is based upon a faulty premise -- that Vantage is a health care provider and  "is responsible for hiring nurses and seeing to patient care." (Complaint at ¶¶ 11, 57g).  To the contrary, Defendant Vantage contends that its "sole duty is to provide [CCCF] medications," and that "[i]t does not hire doctors or nurses nor provide any type of medical care." (Document # 38, Defendant Vantage's Brief, at p. 7).  In support of this contention, Defendant Vantage has attached to its motion to dismiss a copy of its Pharmaceutical Service Agreement with CCCF ("Service Agreement"), which clearly states that Vantage d/b/a Care Apothecary is a pharmacy, and is responsible for providing CCCF with "drugs, intravenous solutions, biologicals and supplies," as well as a "medication administration system, medication carts, and all accessories for the system." (Document # 37, Exhibit A, at p. 1).  In addition, Defendant Vantage has agreed to "maintain drug profiles on each inmate," and to "provide drug information and consultation to [CCCF's] licensed professional staff." (Id.).  Nothing in the Service Agreement indicates that Defendant Vantage is either a health care provider or is responsible for hiring nurses and overseeing patient care at CCCF.[6]  Plaintiff has not submitted any argument or evidence sufficient to overcome the express terms of the Service Agreement, nor can he conceivably do so.

For the foregoing reasons, therefore, summary judgment will be granted in favor of

---

[6] Fed.R.Civ.P. Rule 12(b) provides that "[i]f, on a motion ...to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,..."  Here, Defendants rely upon the terms of its Service Agreement with CCCF, which this Court has reviewed and considered as part of its determination of Defendant Vantage's motion.  As a result, Defendant Vantage's motion to dismiss will be treated as a motion for summary judgment and disposed of in accordance with Rule 56 of the Federal Rules of Civil Procedure.

Defendant Vantage with regard to Plaintiff's Eighth Amendment deliberate indifference claim.

### b. CCCF Defendants

The CCCF Defendants contend that Plaintiff's Eighth Amendment claim against Defendants Miller, Wade, Preston and Allen cannot stand, because "[a] local government may not be held liable by *respondeat superior*," under the Supreme Court's holding in Monell v. New York City Dep. Of Social Services, 436 U.S. 658 (1978). (Document # 45, CCCF Defendants' Brief, at unnumbered p. 6). In Monell, the Supreme Court held that local government units may not be found liable under § 1983 unless "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 684. Here, the CCCF Defendants argue that "Plaintiff has failed to allege any facts from which this Court can conclude that the Plaintiff has adequately pled, or can plead, such a "policy or custom" sufficient to hold the Prison Board and/or County Commissioners liable." (Document # 45 at unnumbered p. 7). The Court disagrees.

In his Complaint, Plaintiff plainly states that the alleged deliberate indifference to his medical needs occurred as a result of "CCCF prison officials custom policy to:

> a. wait for a tragic event before an inmate can receive medical attention.
>
> b. rely on nurses to evaluate Plaintiff and other inmates with no supervisor or doctor to consult with in-house
>
> c. allow medical information of Plaintiff to be discussed in the company of other inmates and prison staff showing no concern for Plaintiff's right to confidentiality.
>
> d. stop or start medications without examining or talking with Plaintiff['s] [or] other inmates informed consent.
>
> e. dispense medication that has been discontinued along with Plaintiff's new medication.
>
> f. dispense Plaintiff's medicine with prison guards who are not trained or licensed .

g. allow guards to provide medical treatment to Plaintiff and other inmates without proper training.

h. allow inmates to apply medication, sauves[sic], creams, and bandages, in the dayroom shared by Plaintiff and other inmates without proper sterilization of area used, to do so.

i. Allow medication to come from a pharmacy pre-packaged for Plaintiff and other inmates with no inspection by CCCF medical staff.

j. have on call a doctor, that nurses are unable to contact.

k. have no nurse in medical after 16:00 hrs.

l. keep inmates in booking cells after 16:00 hrs. instead of calling in a nurse or taking inmate to the hospital.

m. not following up on Plaintiff's or other inmates on medication or treatments, leaving Plaintiff with extreme anxiety and depression.

n. ignore non-emergency medical needs of Plaintiff even though Plaintiff's needs present risk of harm.

o. deny access to diagnosis and treatment by qualified health care professionals.

p. have the on-duty nurse phone inmate housing units and discuss healthcare matters and screen who nurse wants to see that day.

q. have only one nurse working on weekends to administer medical treatment in proportion to the size and number of inmates.

r. inmates who are injured and incur blood loss after 16:00 hrs. have to rely on guards to treat them with adequate medical treatment.

s. allow medication to get sent to wrong housing units because of lack of record keeping, Plaintiff and other inmates never receive.

t. require Plaintiff and other inmates that need only to ask a medical question to have to sign up on sick call and be subjected to a
$ 3.00 charge.

u. to charge Plaintiff and other inmates a $ 3.00 charge even though the Plaintiff is being seen for the same medical condition yet to be treated.

v. CCCF does not have separate housing unit for mental inmates.

w. the prison houses general population inmates with mental

10

inmates putting inmates and guards in risk of harm."
(Complaint at pp. 11-13, ¶ 43a-w). In addition, Plaintiff alleges that "it is custom policy for CCCF to treat Plaintiff and other inmates without explaining the risks of the treatment," and "CCCF officials base quality of care on cost of care, not on the best care to treat the conditions causing Plaintiff the pain." (Complaint at ¶¶ 52, 55). Taken together and accepted as true for purposes of Defendants' motion to dismiss, the foregoing allegations adequately depict a policy, custom, and/or established course of conduct that a fact finder may find sufficient to hold the CCCF Defendants liable for violating Plaintiff's Eighth Amendment rights. Accordingly, the CCCF Defendants' motion to dismiss Plaintiff's Eighth Amendment claim, based upon Plaintiff's alleged failure to adequately plead a policy or custom, must be denied.

Alternatively, the CCCF Defendants argue that Plaintiff has failed to adequately set forth an Eighth Amendment deliberate indifference claim because he has not established a serious injury or medical need, and he merely challenges the adequacy of treatment he received. Once again, the Court disagrees. In particular, Plaintiff has alleged that, upon his arrival at CCCF, he informed "Nurse Brenda" that he suffered chronic back pain due to a protruding disk in the L4-L5 area of his spine, and that this caused constant pain in his lower back, groin area, knee and ankle, for which he had been prescribed pain medication. (Complaint at ¶¶ 21-24). He later alleges that he suffered a further injury to his low back moving a "heavy dayroom table" on June 26, 2008, which limited his ability to walk and caused him to suffer "stabbing spasms of pain in [his] back, groin and leg, with no feeling in his feet." (Id. at ¶¶ 33-37). Plaintiff also alleges that he suffered "extreme tightness and pain in [his] head and face," and loss of clear vision and depth perception. (Id. at ¶ 39). These allegations are sufficient to establish the existence of one or more serious medical needs. Moreover, Plaintiff claims that he was never seen or treated by a medical doctor or physician's assistant at any time during his incarceration at CCCF. This goes well beyond a simple dispute regarding the adequacy of the medical care he was receiving. Thus, the CCCF Defendants' motion to dismiss Plaintiff's Eighth Amendment claim, based on the alleged insufficiency of Plaintiff's allegations, will be denied.

### **2.     Fourteenth Amendment Claim**

Plaintiff claims that the CCCF Defendants violated his Fourteenth Amendment due process rights by failing to adequately address his medical needs; failing to keep the law library up-to-date; denying his right to access the mail seven days a week and to seal the envelopes on his outgoing mail; refusing to make a notary public available without having to go through the Warden; and leaving the lights on in his cell. (See, generally, Complaint at ¶ 61a-z).[7]

The CCCF Defendants have incorporated by reference Defendant Vantage's argument that, to the extent Plaintiff is challenging the adequacy of his medical treatment under the due process clause of the Fourteenth Amendment, such claim must be dismissed because Plaintiff has already brought the identical claim under the Eighth Amendment.[8]  This Court agrees. See Albright v. Oliver, 510 U.S. 266, 273 (1994)(holding that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims")(citation omitted); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); and Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("Appellant's due process clause is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment").  As a result, the CCCF Defendants' motion to

---

[7] The Court notes that Plaintiff also raises a due process challenge to the adequacy of CCCF's grievance system under Count 2, ¶ 61 of his Complaint; however, the adequacy of CCCF's grievance system is challenged more fully in Count 3, ¶ 63 of the Complaint and will, thus, be addressed separately herein.

[8] The Court notes that Defendant Vantage responded to this claim, even though Plaintiff limits his Fourteenth Amendment claim to "CCCF prison officials." (Complaint at ¶ 61). Nevertheless, to the extent Plaintiff may have intended to assert the medical portion of his Fourteenth Amendment claim against Defendant Vantage, such claim is dismissed for the reasons discussed in the body of this Opinion and Order.

dismiss Plaintiff's Fourteenth Amendment due process challenge to the adequacy of his medical treatment will be granted.

However, by simply incorporating by reference Defendant Vantage's motion to dismiss Plaintiff's due process challenge to the adequacy of his medical treatment, the CCCF Defendants have failed to respond to Plaintiff's other due process challenges to various conditions of confinement at CCCF, as set forth above. As a result, all non-medical Fourteenth Amendment due process claims will survive the CCCF Defendants' motion to dismiss.

### 3. Right to Grievance System

In Count 3, ¶ 63 of the Complaint, Plaintiff claims that the CCCF Defendants violated his "right to a grievance system," which is construed as a due process challenge. However, the Third Circuit has held that a "state grievance procedure does not confer any substantive constitutional rights upon prison inmates." See Burnside v. Moser, 138 Fed.Appx. 414, 415 (3d Cir. 2005), quoting Hoover v. Watson, 886 F.Supp. 410, 418 (D.Del. 1995), aff'd 74 F.3d 1226 (3d Cir. 1995). Thus, Plaintiff has failed to state a claim upon which relief may be granted in this regard, and said claim will be dismissed.

### 4. Defendant Urey

The Prison Litigation Reform Act provides that:

> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A. Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate

that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. See 28 U.S.C. §1915(e)(2)[9]. Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

As noted earlier, Defendant Urey has never been served in this case, nor has any attorney entered an appearance on her behalf. The docket indicates that defendant Urey was added as a Defendant in this case on or about March 2, 2009. [Document # 20]. Since then, the United States Marshal Service has made extraordinary efforts to serve Defendant Urey in this case, to no avail. (See Document ## 29, 31, 67, 69). As a result, Defendant Urey will be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as she was not served within 120 days of the date she was added as a Defendant in this case.

---

[9]

Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

### 5. Injunctive Relief

As relief for his claims in this case, Plaintiff has requested, *inter alia*, a preliminary and permanent injunction against the CCCF Defendants to take certain actions to rectify the problems he has identified in his Complaint. Plaintiff has since been transferred from CCCF to the State Correctional Institution at Graterford, Pennsylvania, where he is currently incarcerated. As a result, Plaintiff's requests for injunctive relief are moot and will be dismissed.

## III. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. The Motion to Dismiss filed by Defendant Vantage [Document # 37] is GRANTED, and the Clerk is directed to terminate said Defendant from this case.

2. The Motion to Dismiss filed by the CCCF Defendants [Document # 44, is granted in part and denied in part, as follows:

    a. The Motion is DENIED with regard to Plaintiff's Eighth Amendment claim against the CCCF Defendants, and said claim will be allowed to proceed;

    b. The Motion is GRANTED with regard to Plaintiff's Fourteenth Amendment due process claim challenging the adequacy of medical treatment Plaintiff received at CCCF, and such claim is hereby dismissed;

    c. The Motion is DENIED with regard to Plaintiff's remaining Fourteenth Amendment due process claims regarding conditions of confinement at CCCF, unrelated to his medical treatment, and such claims will be allowed to proceed.

    d. The Motion is GRANTED with regard to Plaintiff's due process claim regarding his "right to a grievance system," and such claim is hereby dismissed.

3. By virtue of the authority granted by the PLRA, Defendant Urey is dismissed from this case due to Plaintiff's failure to have her served within 120 days of the date she was added as a Defendant in this case, in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.

      4.     Plaintiff's request for injunctive relief against the CCCF Defendants is dismissed as moot.

                     /s/ Susan Paradise Baxter
                     SUSAN PARADISE BAXTER
                     United States Magistrate Judge

Date:  December 18, 2009