IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW C. BICKEL, | ) | |
|     Plaintiff | ) | C.A. No. 08-258 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| JUDGE GORDON R. MILLER, et al., | ) | |
|     Defendants | ) | |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I.    INTRODUCTION

### A.    Relevant Procedural History

On September 12, 2008, Plaintiff Andrew C. Bickel, a prisoner formerly incarcerated[2] at the Crawford County Correctional Facility ("CCCF"), initiated this *pro se* civil rights action under 42 U.S.C. § 1983, against: Judge Gordon R. Miller ("Judge Miller"), Chairman of the Crawford County Prison Board ("Prison Board"); Tim Lewis, Warden at CCCF ("Lewis"); Morris Wade ("Wade"), Jack Preston ("Preston"), and Sherman Allen ("Allen"), Crawford County Commissioners and members of the Prison Board; Vantage LTC Partnership d/b/a Care Apothecary (incorrectly identified by Plaintiff as "Vantage CCCF Healthcare Provider") ("Vantage"); Doctor Richard Moran ("Moran"); Judy Urey, a nurse practitioner ("Urey"); and two

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 5, 39].

[2] Plaintiff is presently incarcerated at the State Correctional Institution at Graterford, Pennsylvania

unnamed Defendants identified as "HMO Doe" and "Jane Doe #2." (Defendants Miller, Lewis, Wade, Preston, and Allen are collectively referred to herein as "CCCF Defendants").

In his Complaint, Plaintiff claimed that Defendants were deliberately indifferent to his serious medical needs in violation of his rights under the eighth and fourteenth amendments to the United States Constitution, and violated his "right to a grievance system."

On or about December 12, 2008, Plaintiff voluntarily dismissed his claims against unnamed Defendants "HMO Doe" and "Jane Doe #2," and said Defendants were terminated from this case. [ECF No. 15]. Defendant Moran was subsequently terminated from this case on October 21, 2009, due to Plaintiff's failure to have him served. (See Text Order dated October 21, 2009). In the interim, Defendant Vantage and the CCCF Defendants filed motions to dismiss. [ECF Nos. 37 and 44, respectively].

On December 18, 2009, this Court entered a Memorandum Opinion and Order granting Defendant Vantage's motion to dismiss and terminating Defendant Vantage from this case, and granting the CCCF Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process claim challenging the adequacy of his medical treatment, and Plaintiff's Fourteenth Amendment due process claim regarding his right to a grievance system; however, the CCCF Defendants' motion was denied in all other respects, and Plaintiff's remaining claims against the said Defendants were allowed to proceed beyond the pleading stage. [ECF No. 76]. In addition, Plaintiff's claims against Defendant Urey were dismissed due to Plaintiff's failure to have her served, and Defendant Urey was terminated from this case. [Id.].

Thus, the only Defendants remaining in this case are the CCCF Defendants, and the only claims remaining against them are: an Eighth Amendment claim of deliberate indifference to Plaintiff's serious medical needs, and a Fourteenth Amendment claim challenging conditions of confinement at CCCF.

The parties have now completed discovery and the CCCF Defendants have filed a motion for summary judgment as to Plaintiff's remaining claims [ECF No. 101], arguing that Plaintiff

has failed to exhaust his administrative remedies with regard to a majority of his claims, and has failed to produce any evidence to establish a basis for his claims. [ECF No. 102, CCCF Defendants' Brief]. Plaintiff has since filed "Objections" and other documents in opposition to the CCCF Defendants' motion. [ECF Nos. 106-108, 115, 116). This matter is now ripe for consideration.

### B.      Relevant Factual History

Plaintiff was incarcerated at CCCF from May 21, 2008 through October 13, 2008. (ECF No. 103, Defendants' Concise Statement of Material Facts, at ¶ 1; ECF No. 109, Plaintiff's Concise Statement of Material Facts, at ¶ 2). Plaintiff alleges that he was not screened by CCCF's medical staff until May 23, 2008, at which time Plaintiff gave a "Nurse Brenda" two separate lists of medication: one listing medications Plaintiff received from outside physicians, and one containing a list of medications Plaintiff "thought he received at Erie County Prison." (ECF No. 8, Complaint, at ¶¶ 16-19). According to Plaintiff, he also informed "Nurse Brenda" that he had "two damage that were causing him severe pain," apparently referring to a protruding disk in the L4-L5 area of his spine that caused him to experience constant pain in his lower back, groin, knee and ankle. (Id. at ¶¶ 20-22). Plaintiff requested his prescribed pain medication, but was told by "Nurse Brenda" that CCCF did not keep any prescription pain medication on hand and that "medical may not be able to get [his] medication because of Memorial Day weekend." (Id. at ¶¶ 23-26). As a result, Plaintiff alleges that he "received no substantial pain medication for over seven (7) days leaving him in torturus [sic] pain.... (Id. at ¶ 30).

On June 27, 2008, Plaintiff saw a nurse and told her that he suffered a "new injury" to his back when he moved a "heavy day room table" the day before. (Id. at ¶¶ 33-34). Yet, Plaintiff alleges that the medical staff let him "suffer with no doctor to examine [him]." (Id. at ¶ 35). Plaintiff complains that he "has been reduced to limited walking caused by stabbing spasms of

3

pain in [his] back, groin, and leg, with no feeling in his feet." (Id. at ¶ 37). As a result, Plaintiff states that he "has been confined to sitting in a hard plastic chair, having to extend his damaged leg straight out to help reduce pain." (Id. at ¶ 38). In addition, Plaintiff alleges that he suffers "extreme tightness and pain in [his] head and face, causing [him] to lose clear vision, and loss of depth perception...." (Id. at ¶ 39). Nonetheless, Plaintiff complains that he was never seen by a doctor, physician assistant, or "psych doctor," during his time at CCCF. (Id. at ¶¶ 27, 42, 48).

### C. Standards of Review

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a

4

scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### D. Exhaustion
#### 1. The Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:
> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other

5

> correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 88-94 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

defective ... appeal." Id. at 83-84.

A plaintiff need not affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, ___, 127 S.Ct. 910, 921 (Jan. 22, 2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). Instead, it is the burden of a defendant asserting the defense to plead and prove it. Id.

## 2. The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[4] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting §
> 1997e(a)'s exhaustion requirement to include a procedural default component.
> Based on our earlier discussion of the PLRA's legislative history, [...] Congress
> seems to have had three interrelated objectives relevant to our inquiry here: (1) to
> return control of the inmate grievance process to prison administrators; (2) to
> encourage development of an administrative record, and perhaps settlements,
> within the inmate grievance process; and (3) to reduce the burden on the federal
> courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is
> better served by interpreting § 1997e(a)'s exhaustion language to include a
> procedural default component than by interpreting it merely to require termination
> of all administrative grievance proceedings.

---

[4] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### 3. The Administrative Process Available to CCCF Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at ___, 127 S.Ct. at 922-23.

CCCF has established a multi-tier system whereby an inmate may seek formal review of any aspect of his imprisonment. The procedure is detailed in the General Population Handbook which is provided to every inmate upon his arrival. (See ECF No. 101-1, pp. 4-21). The written policy indicates that, initially "most routine housing unit questions and matters can be handled directly by speaking with your housing unit officer." (Id. at p. 12). Following an attempt at informal resolution, the inmate must fill out a **request form** which is made available in his housing unit and which must be submitted to the housing unit officer. Id. Next, inmate **grievances** can be obtained from the housing unit officer. Appeals of grievances are to be submitted to the deputy warden. Id. The Inmate Handbook does not indicate whether there are any time limitations to the filing of a grievance. Id.

Here, the CCCF Defendants argue that Plaintiff has failed to exhaust his administrative remedies in accordance with the procedures outlined in the Inmate Handbook. The record reflects that Plaintiff filed an inmate grievance on June 18, 2008, regarding "conditions [at CCCF] concerning dispencing [sic] medicine by the guards." (ECF No. 101-1 at p. 24). In

particular, Plaintiff complained that "only trained supervised staff" should dispense medication. (Id.). A response to this grievance was issued on June 25, 2008, stating "[o]ur policy concerning this is the nurse packs the meds and they are delivered to the H/U and the pod officers only supervise the distribution, they do not administer them or package them." (Id.). Before this response was issued, Plaintiff sent a letter to Defendant Lewis, dated June 21, 2008, complaining about the "inadequate system for ensuring inmates receive medication," and a "lack of initial screening of inmates upon entering CCCF, and examination by a doctor." (Id. at p. 26). Since this letter pre-dated the initial response to Plaintiff's grievance of June 18, 2008, it cannot be considered an appeal from the same, as Plaintiff appears to contend. (See ECF No. 109, Plaintiff's Concise Statement of Material Facts, at ¶ 5).

Nonetheless, the record does contain a copy of another letter Plaintiff sent to Defendant Lewis, dated August 11, 2008, regarding a grievance Plaintiff filed "concerning the inmate's medication being dispensed by the CCCF guards." (ECF No. 101-1 at p. 33). The Court construes this letter as a proper appeal of the issues raised in Plaintiff's grievance of June 18, 2008. Defendant Lewis responded to this appeal on August 14, 2008, stating "we have in place a policy for the management of all pharmaceuticals here at this institution." (Id.). Thus, the Court finds that Plaintiff has fully exhausted his administrative remedies as to the narrow issue of whether his Eighth Amendment rights were violated by the alleged dispensing of medication by prison guards. (See ECF No. 8, Complaint, at ¶¶ 43(f), 49, 59(f), 59(h)).[5]

---

5

Plaintiff claims that he also exhausted his administrative remedies regarding an inmate grievance he filed on July 2, 2008, in which he complained that a "Ms. Fox" interfered with his "questions directed to the medical staff about seeing a doctor, and questioning them of [sic] medication they supplied." ( at p. 28). However, no claim is raised in this case against a "Ms. Fox" for allegedly interfering with his medical treatment. Thus, the exhaustion or non-exhaustion of this grievance is immaterial. The Court notes further that Plaintiff sent Defendant Lewis a follow-up letter to his appeal of August 11, 2008, in which he stated that he "wish[ed] to add as an amendment to the grievance concerning the dispensing of medication by guards to include the following: (1) inadequacy of [CCCF's] medical department, (2) the access to the courts, (3) the inmate grievance system, (4) lights on in the cell 24 hours a day, [and] (5) lack of medical care provided by the prison amounts to deliberate indifference with no remidal [sic] steps

9

Plaintiff has failed to present, and the record does not contain, any other relevant grievances Plaintiff filed at CCCF pertaining to the issues raised in this case. Thus, the Court finds that Plaintiff has failed to exhaust his administrative remedies with regard to all claims other than his Eighth Amendment claim regarding the dispensing of medications by prison guards, and summary judgment will be granted in favor of Defendants on such claims.

### E. Discussion

The only remaining claim to be considered on its merits is Plaintiff's Eighth Amendment claim that Defendants were deliberately indifferent to his serious medical needs by having his medications dispensed by prison guards, rather than medically-trained staff members.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need,[6] and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed

---

taken." (ECF No. 101-1 at p. 35). However, this was an improper attempt to raise issues for the first time on appeal, in contravention of CCCF's grievance policy. Thus, these issues were not properly exhausted.

[6] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Here, Plaintiff has failed to produce any evidence to show that he suffered any injury as a result of having his medications distributed to him by prison guards. Plaintiff does not claim that the prison guards withheld medications from him or gave him improper medications that caused him harm or worsened his pain. He simply objects to the fact that the prison guards were "unlicensed" and "untrained" to dispense medications. (ECF No. 8, Complaint, at ¶ 59(f)). This does not rise to the level of a constitutional violation. Accordingly, Defendants are entitled to summary judgment in their favor with regard to Plaintiff's remaining Eighth Amendment claim.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW C. BICKEL, )<br>      Plaintiff )<br>)<br>v. )<br>)<br>JUDGE GORDON R. MILLER, et al., )<br>      Defendants ) | C.A. No. 08-258 Erie<br><br>Magistrate Judge Baxter |

## **ORDER**

AND NOW, this <u>7th</u> day of July, 2011,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [ECF No. 101] is GRANTED, and this action is DISMISSED. The Clerk is directed to mark this case closed.

                                     <u>/s/ Susan Paradise Baxter</u>
                                     SUSAN PARADISE BAXTER
                                     United States Magistrate Judge